IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRY LYNN JOHNSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3215 |
| | § | |
| DAVID DEXEL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Sherry Johnston's elderly mother, Willie Jo Mills, died in a nursing home. Johnston alleges that Mills received improper and negligent care that contributed to or caused her death. Johnston asserts a long list of claims against a long list of defendants who she alleges played some role in Mills's death.

In August 2017, the court granted in part the defendants' motions to dismiss and dismissed, with prejudice, the claims against Sherry Fox and Judge Christine Butts, except for one claim against Judge Butts under § 1201.003 of the Texas Estates Code. The court also dismissed with prejudice and the claims under 42 U.S.C. § 1983 against David Dexel, Ginger Lott, GSL Care Management LLC, and Clarinda Comstock. The court dismissed, without prejudice and with leave to amend, the § 1983 claims against Harris County, the state-law wrongful-death claim against Dexel, the claims under the Americans with Disabilities Act, the state-law claims for civil conspiracy to breach fiduciary duties, intentional infliction of emotional distress, fraud, defamation, violating statutory duties, and for "ultra vires" illegal acts. The court retained as adequately pleaded the claims for breach of fiduciary duty against Dexel and Lott, and the wrongful-death claim against Lott.

1

Johnston filed a second amended complaint seeking to cure the identified deficiencies. (Docket Entry No. 38). The defendants again moved to dismiss, Johnston responded, and the defendants replied. (Docket Entries No. 43, 45, 46, 47, 49, 52, 53, 56, 57, 59). This Memorandum and Opinion addresses the second motions to dismiss.

A threshold matter. Johnston filed a motion for leave to file a third amended complaint after the briefing ended on the motions to dismiss the second amended complaint. (Docket Entry No. 61). This was more than 5 months after Johnston filed her second amended complaint in October 2017, which was after the court had twice extended the filing deadline. Johnston's position that the proposed third amended complaint seeks to "further narrow her claims" is undermined by its length—it is 140 pages, 71 pages longer than the second amended complaint. Johnston's response to the second round of motions to dismiss states that "most of the basic facts are set out and contained within the lengthy second amended complaint." (Docket Entry No. 53 at 29). While Johnston also asserts that "the factual recitation can be improved," her acknowledgment that the "basic facts" are the same in the proposed amended complaint weighs against granting leave to file it. (*Id.*). Johnston has not shown good cause to file her third amended complaint. And even if the court considered the additional allegations in the proposed third amended complaint, (Docket Entry No. 61, Ex. 1), those allegations would not change the outcome, making the proposed amendment futile. The motion for leave to amend is denied.

Johnston's second amended complaint asserted nine claims:

1. Dexel, Comstock, and Lott breached their fiduciary duties to Mills.
2. Dexel and Lott caused Mills's wrongful death through their "wrongful acts of fraud, conspiracy, and breach of fiduciary duty" as Mills's guardians.

3. Dexel's "fraudulent concealment of his resignation" and the "illegal, *ex parte* meeting with Judge Butts" constituted fraud.

4. All defendants committed civil conspiracy by participating in "the illegal, *ex parte* meeting that resulted in the order appointing Lott as Successor Guardian so that Dexel could resign." (Docket Entry No. 38 ¶ 86).

5. Judge Butts violated her duty to exercise reasonable diligence to ensure that Dexel and Lott were performing their duties as Mills's guardians, giving rise to a claim against her bond under § 1201.003 of the Texas Estates Code.

6. Mills suffered from the defendants' intentional infliction of emotional distress.

7. Harris County violated the ADA by discriminating against Mills based on her disability.

8. All the defendants violated Title II of the ADA by depriving Mills and Johnston of their Fourteenth Amendment due-process right to a meaningful hearing and depriving Mills of her First Amendment rights to freedom of speech and association.

9. All defendants allegedly violated the ADA's retaliation provision, 42 U.S.C. § 12203.

In the response to the defendants' motions to dismiss, (Docket Entry No. 52), Johnston dismissed the following claims: (1) the claim under the Rehabilitation Act, 29 U.S.C. § 504; (2) the civil-conspiracy claims against Dexel, Comstock, Lott, Harris County, and Judge Butts; (3) the fraud claims; (4) the intentional-infliction-of-emotional-distress claim; and (5) the wrongful-death claim against Dexel. After the motions and replies were filed, Johnston also stipulated to dismiss, with prejudice, the claims against Lott and GSL Care Management. (Docket Entry No. 62). Those claims are dismissed, with prejudice, and Lott's motion to dismiss those claims, (Docket Entry No.

46), is moot.

The motions to dismiss challenge the remaining claims for: (1) breach of fiduciary duty against Dexel and Comstock; (2) recovery against Judge Butts's bond under § 1201.003 of the Texas Estates Code; and (3) retaliation and discrimination based on Mills's disability, against all the defendants. Based on the pleadings; the motions, responses, replies; the record; and the applicable law, Judge Butts's motion to dismiss, (Docket Entry No. 49), is denied; Dexel's motion to dismiss, (Docket Entry No. 43), is granted in part and denied in part; and Comstock's and Harris County's motions to dismiss, (Docket Entries No. 45, 57), are granted.

The reasons for these rulings are explained below.

**I.      Background**

This factual recitation is taken from Johnston's second amended complaint. The well-pleaded factual allegations are taken as true for the purposes of the motions to dismiss.

In 2008, Johnston and her sister, Cindy Pierce, sued their brother, Larry Mills, for converting Mills's property and financial assets. A court investigator's June 2008 report found that Johnston was Mills's preferred guardian. A year later, the presiding probate judge appointed Howard Reiner as Mills's attorney ad litem and David Dexel as Mills's temporary guardian of the person and estate. Johnston, Pierce, and Larry Mills signed a settlement agreement. As part of that agreement, the probate judge appointed Dexel as Mills's guardian of the person on a continuing basis.

Dexel hired Ginger Lott and GSL Care Management, LLC,[1] to manage Mills's care. Between 2009 and 2012, Johnston frequently visited Mills at Silverado, the nursing home where

---

[1] All parties appear to treat Lott and GSL Care Management as interchangeable. Lott and GSL filed a joint motion to dismiss, and the motion does not make any effort to distinguish the two entities (one natural, one legal) from each other for liability purposes. This opinion refers to Lott and GSL collectively as "Lott."

4

Mills resided. In 2012, Silverado changed management. Johnston perceived a decline in the quality of Mills's care after the change. Beginning in 2012 and into 2013, Johnston complained to Dexel about her mother's care. Mills was hospitalized several times with urinary tract infections. Johnston complained that the infections resulted from poor medical care, but Dexel did not move Mills to a different nursing home. The relationship between Johnston and Dexel deteriorated.

In May 2013, Dexel moved Mills to the section of Silverado that provided a higher level of care. According to the second amended complaint, this section's residents had behavioral issues and were aggressive toward Mills. That month, Johnston's protests about how Silverado was treating Mills led it to ban Johnston from the premises. Johnston alleges that Dexel worked with Silverado to ban her from visiting.

In June 2013, Mills fell out of her wheelchair, breaking several bones in her right leg. Dexel discontinued Mills's physical therapy during her recuperation. Johnston alleges that this made Mills's muscle problems worse. That same month, Dexel allegedly made a "secret, *ex parte*, oral motion"—that he filed in writing in the public records of the case three days later— to have Clarinda Comstock appointed as Mills's guardian ad litem. Judge Butts, the presiding probate judge, granted the motion and instructed Comstock to investigate Mills's condition and treatment and report to the court. Dexel allegedly failed to notify both Johnston and Pierce of his intent to seek Comstock's appointment.

Mills's condition continued to deteriorate. By September 2013, she could no longer hold a cup or fork, had lost 30 to 40 pounds, and suffered from recurring urinary tract infections. Johnston continued to demand that Dexel move Mills to a different nursing home and threatened to ask the court to replace Dexel as Mills's guardian. In response, Dexel filed an application to resign and to

5

have the court appoint a successor guardian. On September 13, 2013, Dexel notified interested parties—including Johnston—of a hearing set for September 24, 2013. On September 16, 2013, Comstock filed a report about Mills's condition and treatment. Johnston alleges that the following day—one week before the hearing date—Dexel, Lott, Comstock, and Judge Butts had a "secret, *ex parte* meeting/hearing" during which Judge Butts appointed Lott as Mills's successor guardian, replacing Dexel.

In October 2013, Lott moved Mills from the Silverado nursing home to the Hampton nursing home. In December 2013, Johnston filed an emergency application for a temporary restraining order, including "graphic and disturbing" pictures of Mills, with Sherrie Fox, Judge Butts's guardianship coordinator. Fox responded by email that "[t]he court does not see an emergency" and that Johnston's challenge to Lott's appointment "will be tried within two weeks." (Docket Entry No. 38 at 47–48). Ten days later, Judge Butts held a status hearing, at which both Johnston and Pierce testified. They reached an agreement with Lott that allowed outside food for Mills to be brought into the Hampton nursing home, scheduled a regular swallow test, placed a drop camera and phone apparatus in Mills's room, and reinstated Johnston's visitation rights.

Johnston alleges that, in March 2014, Mills's doctor advised Lott that Mills needed to see a cardiologist and an endocrinologist, but Lott failed to set up the appointments. The following month, April 2014, Johnston sent Lott a text message stating that Mills "was delirious and unresponsive with pus in her catheter" and needed to go to the emergency room immediately. (*Id.* at 37). Lott did not respond to Johnston's text. Johnston called 911 and paramedics arrived in an ambulance. Lott allegedly told the Hampton's personnel to send the paramedics away and called a separate ambulance. Although Lott was the only person with legal authority to sign Mills in to the

6

hospital, Lott allegedly never went to the hospital, leaving Mills to sign herself in.

During the next month, Johnston and Pierce filed applications for guardianship. Johnston continued to investigate the Hampton's alleged mistreatment of Mills. Johnston alleges that Lott allowed Mills's caretakers to put two diapers on her, even though she had a history of urinary tract infections. She also alleges that Lott used an out-of-hospital do-not-resuscitate order to have the Hampton withhold nutrition and hydration, even though the hospital had found no swallowing problems.

On September 27, 2014, Mills died. Johnston alleges that she died of starvation after Lott ordered the nursing home staff to withhold food and give Mills nothing but prunes, water, and thickened water.

Johnston sued in state court in September 2016. The defendants removed to federal court, Johnston filed an amended complaint, and the defendants moved to dismiss. (Docket Entries No. 1, 10, 17, 20, 21, 24). In August 2017, the court issued a Memorandum and Opinion granting in part and denying in part the defendants' motions to dismiss and granting Johnston leave to file a second amended complaint as to some of the claims. (Docket Entry No. 32). Johnston filed the second amended complaint, the defendants moved to dismiss, Johnston responded, and the defendants replied. (Docket Entries No. 38, 43, 45, 46, 47, 49, 52, 53, 56, 57, 59).

The claims as to each remaining defendant and the grounds urged for dismissal are examined below.

**II.     The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court

7

confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). A court may "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001) (internal quotation marks omitted). Consideration of documents attached to a defendant's motion to dismiss is limited to "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A & M. Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The court can also consider government documents and similar matters of public record without converting the

motion into one seeking summary judgment. *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir.2011); *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366); *Jathanna v. Spring Branch Indep. Sch. Dist.*, No. CIV.A. H-12-1047, 2012 WL 6096675, at *3 (S.D. Tex. Dec. 7, 2012).

## III. Analysis

### A. The Claims for Breach of Fiduciary Duties

#### 1. The Claim Against Dexel

Under Texas law, "[t]he elements of breach of fiduciary duty are (1) the existence of a fiduciary relationship, and (2) a breach of duty by the fiduciary (3) that causes damages to the client or improper benefit to the fiduciary." *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 150 (Tex. App.—El Paso 2011, no pet.). In the August 2017 Memorandum and Opinion, the court held that Johnston had plausibly stated a claim for breach of fiduciary duty against Dexel. Dexel "does not challenge Johnston's breach of fiduciary duty claim except to the extent that the Court may consider application of issue/claim preclusion and/or the collateral-attack doctrine as preclusive of that claim." (Docket Entry No. 59). For the reasons stated in the earlier opinion, the claim for breach of fiduciary duty against Dexel remains adequately pleaded.

Johnston's second amended complaint, construed as a whole and taking all factual allegations as true, plausibly alleges that before Dexel's discharge as guardian, he breached the guardianship duties he owed to Mills by repeatedly disregarding warnings about the Silverado nursing home's alleged mistreatment of Mills and about her deteriorating physical condition, and by ending her physical therapy. (Docket Entry No. 38 at ¶¶ 54–71). Johnston alleges that, as a result of Dexel's actions, Mills suffered broken bones and a rapid and preventable decline that left

9

her unable to feed herself, which contributed to her malnutrition. (*Id.*). Those allegations state a plausible claim for breach of fiduciary duty.

In addition to the factual allegations about Dexel's conduct as Mills's guardian, Johnston also alleges that Dexel breached his fiduciary duty to Mills based on his conduct in the probate-court proceedings, by "slipping Lott into his guardian position" and by improperly "billing and receiving attorney's fees at $300 per hour in many instances instead of billing at a guardian's rate of $100 per hour." (Docket Entry No. 38 at 4, 19). Dexel argues that claim preclusion bars Johnston's claims relating to his conduct in the probate-court proceedings. Dexel argues that Johnston could have raised those claims in the probate-court proceedings, and that the probate court necessarily resolved the claims in orders approving Dexel's fees and appointing Lott as Mills's successor guardian.

In the August 2017 Memorandum and Opinion, the court allowed Dexel to reassert this preclusion argument at a later stage in the proceedings. The allegations as to Dexel's conduct as Mills's guardian and the allegations as to his conduct in the probate-court proceedings support one claim for breach of fiduciary duty. Even if claim preclusion bars the allegations about Dexel's conduct in the probate-court proceedings, the other allegations about Dexel's conduct as Mills's guardian are sufficient to allow the claim to go forward. A ruling on the preclusion of other facts supporting the same claim is not necessary at this stage. Because the allegations as to Dexel's conduct as Mills's guardian—separate from his conduct in the probate-court proceedings—are sufficient to allow discovery on the claim, the court need not yet consider the preclusion issue about Dexel's conduct in the probate-court proceedings.

The claim for breach of fiduciary duty against Dexel may proceed.

    **2.**    **The Claim Against Comstock**

In the August 2017 Memorandum and Opinion, the court held that Comstock was immune under § 1054.056 of the Texas Estates Code but granted Johnston leave to amend to "plead specific facts—not labels, descriptions, or conclusions—from which the court could infer that her characterizations of Comstock's state of mind are plausible." Op. at 18.

Guardians ad litem are "not liable for civil damages arising from a recommendation made or an opinion given in the capacity of guardian ad litem." TEX. ESTATES CODE § 1054.056. There are exceptions to this immunity rule for recommendations or opinions that are "wilfully wrongful," or that are given "with conscious indifference to or reckless disregard for the safety of another," "with malice" or "in bad faith," or are "grossly negligent." *Id.*

Johnston does not allege that Comstock acted outside her role as a guardian ad litem. Neither the second amended complaint nor the proposed third amended complaint include allegations as to Comstock's state of mind. (*Compare* Docket Entry No. 10, ¶¶ 25(k)–(w), *with* Docket Entry No. 38 ¶¶ 140–156, *and* Docket Entry No. 61, Ex. 1 ¶¶ 186–215). As with the earlier complaint, the allegations are that Comstock made recommendations without a complete investigation, and that those recommendations created conditions that allowed Dexel and Lott to harm Mills. (Docket Entry No. 32 ¶¶ 97, 98, 132, 135, 139). To avoid immunity, there must be factual allegations showing that the guardian ad litem was either affirmatively aware that the recommendations were false or were made with a reckless, conscious indifference to their truth. That in turn requires factual allegations about what the guardian knew and how the truth differed from the statements in the guardian's report.

The allegations here are that Comstock failed to call such "key witnesses" as Mills's primary caretaker at Silverado, who might have testified to neglect or unsafe conditions. But there are no

allegations that Comstock knew that her reports about Silverado were false or that a more searching investigation was needed. *See Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981) (gross negligence is "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."). There is no factual basis to support an inference that Comstock acted from an "entire want of care" or "conscious indifference" to Mills's well-being. *See id.*

The claim for breach of fiduciary duty against Comstock is dismissed, with prejudice, because she is immune under § 1054.056 of the Texas Estates Code**.**

### B. The Claim Against Judge Butts

Judge Butts presided over Mills's guardianship case starting in 2011. David Dexel resigned as Mills's guardian in August 2013, and Judge Butts appointed Ginger Lott as the successor guardian in September. In the August 2017 Memorandum and Opinion, the court dismissed the claims against Judge Butts based on judicial immunity. Op. at 8–11 (citing *Twilligear v. Carrell*, 148 S.W.3d 502, 505 (Tex. App.—Houston [14th Dist.] 2004) (probate judges' actions in conducting guardianship proceedings "are both judicial acts and within the jurisdiction of the probate judges by whom they are required . . . .")). The court granted Johnston leave to amend to state a claim on Judge Butts's bond under § 1201.003 of the Texas Estates Codes for alleged violations of duties. The court held that the amended complaint must "clearly and explicitly plead specific facts about Judge Butts's actions; identify the specific statutory duties that these actions violated; and clarify that Johnston seeks only to recover against, and up to the amount of, Judge Butts's bond." Op. at 10.

Section 1201.003 provides that a "judge is liable on the judge's bond to those damaged if

damage or loss results to a guardianship or ward because of the gross neglect of the judge to use reasonable diligence in the performance of the judge's duty under this subchapter." TEX. ESTATES CODE § 1201.003. It creates "a limited waiver of judicial immunity, allowing recovery for losses directly tied to the judge's duties under" the subchapter. *James v. Underwood*, 438 S.W.3d 704, 714 (Tex. App.—Houston [1st Dist.] 2014). The subchapter imposes duties on probate judges, including the "use of reasonable diligence to determine whether an appointed guardian is performing the required duties," annual inspection of the well-being of each ward, and ensuring that guardians have posted solvent bonds. *Id.* The immunity waiver is limited. It applies only to actions on the judge's bond for gross neglect of the duties imposed in the subchapter, and only to the extent of the bond's value. It does not open judges to generalized liability for violations of other statutes or common-law duties.

The issue is whether the second amended complaint has adequately stated a claim on Judge Butts's bond under § 1201.003. Judge Butts argues that Johnston has not alleged new facts about Judge Butts's actions or the statutory duties these actions violated. (Docket Entry No. 49). Johnston responds that Judge Butts was grossly negligent in determining whether Dexel or Lott performed their duties as Mills's guardian because Judge Butts did not respond to warnings; denied Johnston's requests for a hearing on her application for a temporary restraining order; did not respond to Johnston's requests for a jury trial as to Mills's guardianship; held two ex parte meetings with Dexel; and refused to hear evidence on several emergency motions, one filed two days before Mills died. (Docket Entry No. 38 ¶¶ 162–182). Johnston also cites a 2015 *Houston Press* article in which Judge Butts is quoted complimenting Lott's and Dexel's work, which Johnston alleges shows that Judge Butts was biased toward them. (Docket Entry No. 52).

13

Construing the allegations in the light most favorable to Johnston, she has alleged a plausible claim against Judge Butts's bond under § 1201.003. Johnston does not allege that Judge Butts failed to conduct the annual examination. But she does allege that Judge Butts ignored requests for emergency relief, including a request made two days before Mills died. The context and timing of these requests are enough to state a claim that Judge Butts did not exercise reasonable diligence to determine whether Dexel and Lott were performing their duties as Mills's guardian. The claim is limited to the amount of Judge Butts's bond. After discovery, the record may show that Judge Butts diligently considered these requests and reasonably rejected them. But at this stage, the claim may go forward.

### C. The Disability-Discrimination Claims

Johnston alleges that all of the defendants engaged in illegal disability discrimination and retaliation, in violation of the ADA. In the August 2017 Memorandum and Opinion, the court dismissed this claim, without prejudice, and allowed Johnston to amend to plead facts that support "a plausible inference that Mills was treated worse than a similarly situated non-disabled elderly person." Op. at 15.

To state a prima facie case of discrimination under the ADA, the plaintiff must allege that: (1) she has a qualifying disability; (2) she was denied benefits or otherwise discriminated against; and (3) the discrimination was because of her disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). To show discrimination on the basis of a disability, a plaintiff may show either disparate treatment—that the defendant treated her more harshly than a similarly situated but non-disabled person—or that the defendant failed reasonably to accommodate her disability. *Arce v. Louisiana*, 226 F. Supp. 3d 643, 651 (E.D. La. 2016).

Johnston's disability-discrimination claim is based on a failure to provide medical treatment. But failing to provide medical care to a disabled person is not enough, on its own, to allege disability discrimination. *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[W]e agree with two other circuits that have recently concluded that a lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions." (citing *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005))).

Johnston also alleges that the defendants failed to make reasonable accommodations because, despite Mills's preference for a private residential setting, she was instead "institutionalized and segregated in a nursing facility." (Docket Entry No. 32 ¶ 15). Johnston alleges that this failure denied Mills access to community-based services. Johnston also alleges that the defendants acted with "discriminatory animus" by refusing to accommodate her "right of participation" under the ADA and her Fourteenth Amendment due-process right to "a meaningful hearing in the court guardianship proceedings," based on Mills's "expressed desire to have . . . her daughter . . . become guardian of her person." (*Id.* ¶ 203). The problem with the failure-to-accommodate claims is that Johnston does not allege that she or Mills requested these accommodations. Although the allegations may support an inference that Johnston was denied access to the hearing in which the court put Lott in place to succeed Dexel as Mills's guardian, the complaint allegations indicate that Mills was represented at the hearing by her then-guardian, Dexel, her guardian ad litem, Comstock, and her new guardian, Lott.

Finally, the allegations in the second amended complaint still do not include facts that could show that Mills was treated differently than other similarly situated individuals who did not have

15

a disability. *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012). Nor does Johnston allege facts that reasonably support an inference that the defendants acted with discriminatory intent. Johnston alleges in general terms that Mills was disabled, that Mills was mistreated, and that both Johnston and Mills were mistreated in retaliation for their advocacy against that mistreatment. The complaint does not allege a plausible causal connection between Mills's disabilities and the defendants' actions.

The disability-discrimination claim fails as a matter of law. The retaliation claim fails for the same reason: Johnston has not made nonconclusory factual allegations that would plausibly support the conclusion that she and her mother were treated worse than otherwise similarly situated individuals on account of their protesting the nursing homes' or the guardians' actions toward Mills.

The disability-discrimination and retaliation claims are dismissed, with prejudice, because repeated attempts to cure the pleading deficiencies have failed.

## IV. Conclusion

The motion for leave to file a third amended complaint, (Docket Entry No. 61), is denied. Lott's motion to dismiss, (Docket Entry No. 46), is moot. Judge Butts's motion to dismiss, (Docket Entry No. 49), is denied. Dexel's motion to dismiss, (Docket Entry No. 43), is granted in part and denied in part. Comstock's and Harris County's motions to dismiss, (Docket Entries No. 45, 57), are granted. A status conference to address the remaining work is set for **May 29, 2018, at 10:30 a.m.**

SIGNED on May 15, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge