**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SHERRY LYNN JOHNSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-3215 |
| | § | |
| DAVID DEXEL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER FOR SUPPLEMENTAL BRIEFING**

In September 2014, Sherry Lynn Johnston's elderly mother, Willie Jo Mills, died in a nursing home. Johnston alleges that Mills received improper and negligent care that led to her death. Johnston asserts a long list of claims against a number of defendants, all of whom she alleges played some role in Mills's death. The defendants brought motions to dismiss and, based on those motions, the court dismissed each defendant except David Dexel and Judge Christine Butts. Johnston's remaining claims are for fiduciary-duty breach against Dexel and "gross neglect" under Texas Estates Code § 1201.003 against Judge Butts.

Dexel and Judge Butts have moved for summary judgment on these remaining claims. Dexel contends that he did not have a fiduciary relationship with Johnston, that Johnston lacks capacity to assert Mills's survival claims, that claim preclusion bars Johnston's claims, and that Johnston has failed to identify evidence creating a factual dispute material to finding a fiduciary-duty breach. Judge Butts argues that Johnston lacks capacity to sue under Texas Estates Code § 1201.003 and that Johnston has not identified evidence supporting a reasonable inference of gross neglect. Johnston responds that she has capacity to assert survival claims against Dexel because the estate administration has been closed; she was neither a party nor in privity with a party to the probate-

court proceedings; and the record evidence shows a factual dispute material to determining if Dexel owed and breached a fiduciary duty owed to Mills. Johnston argues that the Texas Estates Code § 1201.003 authorizes her to sue Judge Butts and that Judge Butts's failure to hold hearings on Mills's condition, despite motions for temporary restraining orders, supports a reasonable inference that Judge Butts acted with gross neglect. Judge Butts and Dexel have replied.

This court has dismissed the federal causes of action that established its subject-matter jurisdiction. Only Texas-law claims remain, and the parties are not diverse. When a court has dismissed the federal claims that establish subject-matter jurisdiction before trial, the court may, and often should, remand the remaining state-law claims. *Moon v. City of El Paso*, 906 F.3d 352, 360 (5th Cir. 2018); *Batiste v. Island Records Inc.*, 179 F.3d 217, 226–27 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) (quoting *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)).

The district court may decline to retain the state-law claims when they: raise novel or complex state-law issues, substantially predominate over the federal claims, the federal claims have been dismissed, or exceptional circumstances or other compelling reasons are present. 28 U.S.C. § 1367(c); *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). Generally, "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Heggemeier*, 826 F.3d at 872 (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). The court has discretion to retain supplemental jurisdiction over the state-law claims, even after the federal claims are dismissed, if

the statutory and common-law factors support that result. *Enochs*, 641 F.3d at 158–59.

In deciding whether to remand remaining state-law claims based on these factors, the court must consider the "common law factors of judicial economy, convenience, fairness, and comity." *Brookshire*, 554 F.3d at 601–02. Judicial economy concerns include whether the district judge "had substantial familiarity with the merits of the case," and whether "further proceedings in the district court would prevent redundancy and conserve scarce judicial resources." *Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008) (quotations omitted). The convenience factor asks if remand to state court would facilitate the litigation, given the location of "the parties, witnesses, and evidence." *Enochs*, 641 F.3d at 160. "The fairness factor concerns the prejudice to the parties that would arise from dismissal." *Parker & Parsley*, 972 F.2d at 588. Comity requires that "'important interests of federalism and comity' be respected by federal courts, which are courts of limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.'" *Enochs*, 641 F.3d at 160 (quoting *Parker & Parsley*, 972 F.2d at 588–89). For instance, where a "lawsuit touches on multiple issues of state importance while impacting no federal policy," the "[c]onsiderations of comity weigh dramatically in favor of remand," even considering the "work put into determining the defendants many motions to dismiss." *Watson v. City of Allen, Tex.*, 821 F.3d 634, 642 (5th Cir. 2016).

In September 2016, Johnston filed this case in Texas court. It was removed in November 2016 based on the complaint's federal claims. The defendants moved to dismiss all the claims twice. The court granted the motions in part and denied them in part, leaving only state-law claims against Dexel and Judge Butts.

The parties have appeared for initial and status conferences. The court has permitted

Johnston to amend her complaint twice, denying a third amendment. Dexel and Judge Butts have now moved for summary judgment, and their motions have been fully briefed. Through these proceedings, the court has become familiar with the legal and factual complexities of the case.

The parties have presented at least one novel and important question of Texas law that touches on family relationships, estate management, the probate system, and the care of some of the most vulnerable members of our community. The question is whether, or when, claim preclusion bars an "interested person" from later asserting claims that could have been raised during probate proceedings.[1]

Claim preclusion, or res judicata, bars claims that have, or might have, been litigated in an earlier suit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The party asserting claim preclusion must show that: a court of competent jurisdiction made a final determination on the merits; the actions involved the same parties or those in privity with them; and the second action asserts claims that were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008) (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)). "The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double

---

[1] Based on the present record, the claim-preclusion issue does not appear to be avoidable. Dexel and Judge Butts have argued that Johnston lacks capacity to assert survival claims because Larry Mills, not Johnston, is the estate executor. Johnston points to a probate-court order that seemingly removed the estate administration from the "active docket." (Docket Entry No. 88-2). Because Johnston, an heir, has identified evidence supporting an inference that the "administration has been closed," summary judgment does not appear warranted on this ground. *Gonzalez v. Martinez*, No. 01-15-693-cv, 2017 WL 2255649, at *4 (Tex. App.—Houston [1st Dist.] May 23, 2017, no pet.); *see Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998); *Jordan v. Lyles*, 455 S.W.3d 785, 790–91 (Tex. App.—Tyler 2015, no pet.). The record also shows at least one factual dispute material to whether Dexel breached a fiduciary duty because his fee motions indicate that he classified time spent on guardianship duties as attorney hours, seemingly in violation of Texas Estates Code § 1155.052(b). (Docket Entry No. 38-5 at 1–20).

4

recovery." *Daccach*, 217 S.W.3d at 449.

"Generally people are not bound by a judgment in a suit to which they were not parties." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940))). Texas law recognizes "an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit." *Amstadt*, 919 S.W.2d at 652–53. "Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Id.* at 653.

This case presents unresolved state-law issues. Dexel and Johnston were involved in guardianship proceedings before Judge Butts in the Harris County Probate Court. Under Texas law, Johnston was an "interested person" in that proceeding. TEX. EST. CODE § 1002.018. This status permitted, but did not require, Johnston to oppose a guardian's appointment and to challenge the guardian's actions or motions. *See* TEX. EST. CODE §§ 55.001; 1055.001(a); 1155.008. During the probate proceedings, Johnston neither opposed Lott's guardian application, challenged Dexel's fee motions, nor asserted fiduciary-duty claims on those grounds. Dexel argues that claim preclusion bars Johnston from now asserting her fiduciary-duty claims because, as an interested person, she could have raised them during the probate-court proceedings.

Analyzing this argument implicates difficult questions. Is an interested person a party in guardianship or estate administration proceedings for claim-preclusion purposes? When does a guardianship or an estate administration, neither adversarial by nature, count as a previous "action"

for that purpose? Neither the Texas Supreme Court nor the intermediate Texas appellate courts have addressed or answered these questions.

The Texas Estates Code defines an interested person as "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered" and any person "interested in the welfare of an incapacitated person." TEX. EST. CODE § 1002.018. A person does not need to apply for interested-person status, and the Texas Estates Code does not provide procedures for opting out, although a plaintiff must "plead and prove his status as an interested person." *Estate of Matthews III*, 510 S.W.3d 106, 114 (Tex. App.—San Antonio 2016, no pet.). Interested persons have procedural rights to notice of filings, hearings, and probate-court actions; to appear at hearings; to file motions, applications, pleadings, or objections; and to appeal final probate-court actions. *See, e.g.*, TEX. EST. CODE §§ 1055.001; 1055.003; 1051.252; 1051.102(b); 1151.056; 1151.105(b); 1157.054; 1157.058; 1203.004.

Generally, under American law, a lawsuit's parties are plaintiffs or defendants, including third-party plaintiffs or defendants, cross- or counter-claim plaintiffs or defendants, or intervenors. Plaintiffs generally seek some remedy or damages from a defendant by filing a complaint in court. FED. R. CIV. P. 3, 8(a)(2). Defendants, generally those from whom remedies or damages are sought, must be joined by service of a pleading. Absent service, the court lacks power over them. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment . . . to which he has not been made a party by service of process." (citing *Pennoyer v. Neff*, 95 U.S. 714 (1877)).

As Texas law conceives them, interested persons are not parties to litigation in these roles

as traditionally understood. Because a guardianship is designed "to promote and protect the well-being of the incapacitated person," not to adjudicate disputes between parties, the process permits the input of family, friends, caretakers, and those with economic interests at stake. TEX. EST. CODE § 1001.001(a). Those parties need not be formally joined by service with the guardianship application, but they are able to become involved. *See Franks v. Roades*, 310 S.W.3d 615, 627 (Tex. App.—Corpus Christi-Edinburg 2010, no pet.) ("Guardianships are not inherently adversarial proceedings."). Only the proposed incapacitated person, that person's immediate family, and caregivers must be served with notice of guardianship proceedings. *See* TEX. EST. CODE § 1051.103. While the County Clerk must issue a citation informing "all persons interested in the welfare of the proposed ward to appear at the time and place stated in the notice if the persons wish to contest the application," those persons need not be served. *Id.* § 1051.102(b). Interested persons may request, at their own cost, that the County Clerk inform them "of all, or any specified, motions, applications, or pleadings filed with respect to the proceeding." *Id.* § 1051.252.

Given these procedures, an interested person might not receive actual notice of the guardianship, or know—actually or constructively—what has happened in the proceedings. An interested person might not have counsel, or understand the need for counsel, given that the proceedings are not adversarial. While the Texas Supreme Court has held that interested persons are "charged with notice of the contents of probate records," that holding concerns the accrual date for fraud claims, not preclusion. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981); *see also Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 59 (Tex. 2015). These considerations advise against a rule that would extend claim preclusion to all interested persons, no matter their

involvement in, or notice of, the proceedings. But a rule excluding from preclusion interested persons who have actively participated in litigating the probate proceedings runs the risk of subjecting defendants to vexatious litigation and double recovery, while undermining judicial efficiency and stability.

The rule should perhaps fall somewhere between these extremes, but the question is where. Answering that question requires examining the competing interests in court access, judicial efficiency, fairness, and, ultimately, the stakes involved in probate proceedings.

There is also the question whether and when probate proceedings count as an action under the Texas Supreme Court's transaction test. *See Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992) ("A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit."); *cf. In Guardianship of Macer*, 558 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("A probate proceeding consists of a continuing series of events, and later decisions regarding administration of an estate or guardianship of a ward necessarily may be based on earlier decisions in the proceeding." (quotation omitted)).

*Erie*-guesses are never wholly satisfactory, and there is little reliable basis for this court to guess how Texas might answer these questions. The questions at stake here mean that this court is not the best forum to decide them on behalf of the State of Texas. *See Parker & Parsley*, 972 F.2d at 589 ("Aside from the state courts' superior familiarity with their respective jurisdictions' law, the federal courts' construction of state law can be 'uncertain and ephemeral.'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984)).

Because of these difficult and important Texas-law questions, the parties must explain no later than **January 28, 2019**, in briefs not exceeding five pages, whether the court should remand this case to the 253rd Judicial District Court for Liberty County, Texas. The docket call set for January 25, 2019, is cancelled, pending this issue's resolution.

SIGNED on January 14, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge